IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| IN RE: | ) | |
|---|---|---|
| | ) | |
| KEITH B. MILLER | ) | Case No. 09-07528-TOM7 |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Bankruptcy Administrator's Motion to Dismiss or in the Alternative Convert to Chapter 13 with the Debtor's Consent, Pursuant to 11 U.S.C. § 707(b)(1), (2) and (3) (Doc. No. 46)[1](hereinafter, referred to as "Motion") based upon presumption of abuse and totality of the circumstances. Arguments on the motion were heard on May 13, 2010. Appearing at the May 13, 2010 hearing were: K. Edward Sexton, II, attorney for Keith B. Miller (hereinafter, referred to as "Debtor"), and Jon A. Dudeck, Bankruptcy Administrator. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[3] This Court has considered the pleadings, the testimony and evidence,

---

[1]References to pleadings in this bankruptcy case are cited as "Doc. No."
[2]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3]28 U.S.C. §157(b)(2)(A) provides:

> (b)(2)Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate[.]

arguments of counsel, and the law and finds and concludes as follows.[4]

## I. FINDINGS OF FACTS

Debtor filed for relief under chapter 7 of the Bankruptcy Code on December 31, 2009 (hereinafter, "Petition Date"). (Doc. No. 1) Debtor's original Schedule I[5] (BA Ex. 2)[6] provides that Debtor was earning $15,000.00 per month[7] ($11,345.51 per month after payroll deductions) from his employment with Planet Cellular, Inc. at the time of filing.[8] This schedule did not list any income for Debtor's wife. Debtor's original Schedule J provides that Debtor's monthly expenses amounted to $8,151.00 at the time of filing; therefore, Debtor's monthly net income was $3,194.51 at the time of filing. In addition to Schedules I and J, Debtor completed Official Form 22A (BA Ex. 1), which is entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." Debtor noted on this form that his monthly disposable income was $11,575.00 ($3,425.00 in deductions subtracted from Debtor's gross monthly income of $15,000.00). Additionally, Debtor listed his sixty (60) month disposable income under 11 U.S.C. § 707(b)(2) as $694,500.00. Because his monthly disposable income of $11,575.00 multiplied by sixty (60) was higher than the $10,950.00 amount listed under 11 U.S.C. § 707(b)(2)(A)(i)(II),

---

[4]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).
[5]Debtor filed amended Schedules I and J on April 6, 2010. (Doc. Nos. 55, 56)(BA Ex. 3)
[6]The Bankruptcy Administrator's exhibits shall hereinafter be cited as "BA Ex."
[7]It appears this amount was listed to reflect the monthly installments of $15,000.00 Debtor was to receive pursuant to his severance package, which is discussed *infra*.
[8]In response to question 17 of original Schedule I, which provides, "Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document," Debtor noted that his "income will be reduced substantially as he was being paid a severance package from Planet Cellular."

Debtor indicated that the presumption of abuse arises in his chapter 7 case under 11 U.S.C. § 707(b).

On February 8, 2010, the Bankruptcy Administrator filed a timely Statement of Presumed Abuse based upon a review of the foregoing documents. (Doc. No. 39) On March 10, 2010, the Bankruptcy Administrator filed a Motion to Dismiss or in the Alternative Convert to Chapter 13 with the Debtor's Consent, Pursuant to 11 U.S.C. § 707(b)(1), (2) and (3). (Doc. No. 46) Subsequently, on April 6, 2010, Debtor filed amended Schedules I and J. (Doc. Nos. 55, 56)(BA Ex. 3) Debtor's amended Schedule I lists MLS Direct Network, Inc. as his employer[9] for one month and his estimated monthly gross wages at $1,000.00. It also provides that Debtor's spouse has been employed by MLS Direct Network, Inc. for six (6) months, earning estimated monthly gross wages of $2,420.17. The combined average monthly income for Debtor and his spouse is listed as $3,057.36. With respect to amended Schedule J, Debtor left his monthly expenses at $8,151.00 but amended his statement of monthly net income to reflect that his monthly net income has been reduced to <$-5,093.64> due to the decrease in his employment income.

On May 13, 2010, this Court held a hearing regarding the Bankruptcy Administrator's Motion. (Doc. No. 72) After Debtor's counsel and the Bankruptcy Administrator stipulated that Debtor's debts were primarily consumer in nature, the following testimony was provided by the Debtor. Debtor is married and has two minor children. On the Petition Date, Debtor's wife was not employed; however, in January 2010, Debtor's wife obtained employment with MLS Direct Network, Inc. to help Debtor pay their bills. Debtor's two children attend private school, but Debtor's parents have paid the tuition associated with this private education since September

---

[9]Debtor testified that he is currently a 1099 contract worker for MLS Direct Network, Inc.

3

2009. Debtor has not contributed any money to any education accounts for his two children since December 2009, nor has he placed any of his assets in the names of his children. Debtor also testified that he recently sold his primary residence for approximately $459,000.00; however, Debtor owed approximately $560,000.00 on the mortgages associated with this residence.[10] Consequently, neither he nor his wife received any of the proceeds from the sale of this residence. Debtor and his family are now living in a rental property.

On the Petition Date, Debtor had outstanding balances of approximately $45,000.00 and $50,000.00 on two separate credit cards that were cancelled during the summer of 2009.[11] Additionally, Debtor had an outstanding credit line balance of $17,000.00[12] owed to Alabama Power Company (hereinafter, "APCO").[13] Debtor testified that he did not have any outstanding hospital bills, medical bills, or any other general consumer debts on the Petition Date.

Immediately preceding his employment with MLS Direct Network, Inc., Debtor was employed by Planet Cellular, Inc. for ten (10) years. Debtor was the vice-president of Planet

---

[10] Schedule D of Debtor's bankruptcy petition indicates that there was a first and second mortgage associated with his primary residence, both of which were in the amount of $550,000.00.

[11] The Debtor erroneously listed these unsecured debts as secured debts under Schedule D of the original bankruptcy petition. At the suggestion of this Court, Debtor amended his schedules to include these debts - a $25,000.00 debt on a Bank of America credit card and a $30,000.00 debt on a Citibusiness credit card - under Schedule F as unsecured nonpriority claims. *See* Doc. No. 73

[12] Debtor's Schedule F reflects that Debtor had an outstanding credit line balance of $19,000.00 owed to APCO. Furthermore, Debtor testified that he listed this debt as an unsecured nonpriority claim under Schedule F before APCO advised him that APCO claims a secured status for this debt.

[13] On the Petition Date, Debtor was under the belief that this debt (which was incurred for the purpose of purchasing two vehicles) was not secured by any collateral. However, APCO has informed Debtor that it claims to be cross-collateralized with respect to this debt.

4

Cellular, Inc. when he decided to leave[14] the company in September 2009. His decision to leave Planet Cellular, Inc. was motivated by decreasing margins in the wireless industry, which directly affected his income to the point where he was earning substantially less than he had previously earned with Planet Cellular, Inc.

Upon his departure from Planet Cellular, Inc., Debtor received a $90,000.00 severance package, which was to be paid to Debtor in six monthly installments of $15,000.00. However, according to Debtor's testimony, he received the entire amount of this severance package in less than six months. Debtor testified that he used the entire amount of this severance package to pay his family's expenses and support failing real estate investments, some of which he still owns.[15] Debtor also testified that he took approximately $80,000.00 out of his 401(k) retirement account in 2008 to "try to make it through" after his employment income and rental income decreased to the point where Debtor was "negative" every month.[16]

Debtor testified that he could not return to Planet Cellular, Inc. and earn the same amount of compensation he was earning prior to his departure from Planet Cellular, Inc. Further, Debtor has been unable to obtain comparable employment with any other employer at a level of compensation comparable to what he was previously earning at Planet Cellular, Inc., which is

---

[14] It is not clear from Debtor's testimony whether he resigned or was terminated from his employment by Planet Cellular, Inc. He simply testified that he "left" his employment with Planet Cellular, Inc.

[15] Debtor testified that a number of his real estate investment properties had been foreclosed by the Petition Date but that he still owns some real estate investment properties. Debtor is not sure which of these properties he still owns, but he testified that he has no intention of holding on to any of them.

[16] Debtor testified that he ceased receiving rental income from his real estate investment properties during the summer of 2009 and has not received any rental income therefrom since then. According to Debtor, he ceased receiving rental income from these properties because a number of renters had left and some of the rental properties had been foreclosed.

5

why Debtor took the 1099 contract worker opportunity with MLS Direct Network, Inc. in September 2009.[17] Since the filing of his amended Schedule I, which provides that Debtor was earning approximately $1,000.00 gross per month from MLS Direct Network, Inc. at the time of the filing of the amended Schedule I, Debtor's income has increased. According to Debtor, he received $1,223.00 in gross income for the month of April and expects to receive approximately $1,700.00 in gross income for the month of May . Debtor expects his employment income from MLS Direct Network, Inc. to continue to increase over time.

The Debtor relies on the foregoing testimony to support his contention that "special circumstances" as defined by § 707(b)(2) exist in this case to rebut the presumption of abuse. The Bankruptcy Administrator disagrees with this position, arguing that Debtor has failed to carry his burden of proving "special circumstances." The Bankruptcy Administrator also argues that Debtor's case is due to be dismissed because the "totality of the circumstances" in this case demonstrates an abuse of chapter 7 pursuant to § 707(b)(3). In the alternative, the Bankruptcy Administrator requests that Debtor's chapter 7 case be converted.

## II.  CONCLUSIONS OF LAW

A.    **Presumption of Abuse Under 11 U.S.C. § 707(b)**

Pursuant to 11 U.S.C. § 707(b),[18] it is presumed that a debtor is abusing chapter 7 of the

---

[17]Debtor's testimony concerning the time frame of the commencement of his employment with MLS Direct Network, Inc. is inconsistent with the time frame listed on his amended Schedule I, which provides that Debtor had been employed by MLS Direct Network, Inc. for a period of approximately one month on April 6, 2010.

[18]11 U.S.C. § 707(b)(1) provides in pertinent part as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily

Bankruptcy Code if she/he has primarily consumer debts and a current monthly income multiplied by sixty (60) that amounts to $10,950.00 or greater. In the present case, the Debtor and the Bankruptcy Administrator stipulated that Debtor's debts are primarily consumer in nature. Second, Debtor's current monthly income (as listed under Debtor's original Schedule I) under § 707(b)(2) is $11,575.00. This amount multiplied by sixty (60) results in a sixty (60) month disposable income of $694,500.00, which is clearly greater than the $10,950.00 amount listed under 11 U.S.C. § 707(b)(2)(A)(i)(II). Therefore, as the Debtor correctly noted on his Official Form 22A, the presumption of abuse arises in his case.

**B.     "Special Circumstances" Under § 707(b)(2)**

Once the presumption of abuse arises under 11 U.S.C. § 707(b), a debtor may rebut the presumption "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."[19] 11 U.S.C. § 707(b)(2)(B)(i). To establish "special circumstances," a

---

> consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter ....
>
> 11 U.S.C. § 707(b)(2)(A)(i)(II) provides in pertinent part as follows:
>
> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than . . . $10,950.

[19]However, pursuant to § 707(b)(2)(B)(iv), the presumption of abuse may only be rebutted

> if the additional expenses or adjustments to income referred to in clause (i) cause the

7

debtor must "itemize each additional expense or adjustment of income[,] . . . provide - (I) documentation for such expense or adjustment to income [,] . . . and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. § 707(b)(2)(B)(ii). Additionally, the debtor must certify "under oath"[20] that the itemization and explanation are accurate. 11 U.S.C. § 707(b)(2)(B)(iii).

Courts have generally taken either a "narrow" or an "expansive" view when interpreting § 707(b)(2)(B)(i) for the purpose of determining whether "special circumstances" exist. *See In re Cribbs*, 387 B.R. 324, 329 (Bankr. S.D. Ga. 2008). The "narrow" view limits "special circumstances" to those circumstances which are similar to the two statutory examples of "special circumstances" Congress supplied in § 707(b)(2)(B)(i). *In re Cribbs*, 387 B.R. at 329 (citing *In re Naut*, 2008 WL 191297, at *10 (Bankr. E.D. Pa. Jan. 22, 2008); *In re Hanks*, 362 B.R. 494, 502 (Bankr. D. Utah 2007)("The statutory examples of serious medical condition and active military service, although not exhaustive, are instructive of the kinds of 'special

---

product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of-

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or
(II) $10,000.

In the present case, Debtor's amended Schedule I lists combined average monthly income of $3,057.36. Subtracting $3,425.00 (the total of all deductions allowed under § 707(b)(2) according to Debtor's Official Form B22A) from $3,057.36 produces a negative number (<-$367.64) which, if multiplied by sixty (60), amounts to a negative number. If Debtor can prove that this negative monthly income is the result of "special circumstances," then § 707(b)(2)(B)(iv) will not prevent him from rebutting the presumption of abuse.

[20]"Presumably, a certification under penalty of perjury will meet this requirement." 6 COLLIER ON BANKRUPTCY ¶ 707.05[2][d] (Alan N. Resnick and Henry J. Sommer eds., 15th ed. rev.). The evidence and testimony in this case were offered under penalty of perjury.

8

circumstances' that would justify deviations from Form B22C under the principal [sic] of *ejusdem generis*")). Courts utilizing the "expansive" view, on the other hand, have found that special circumstances exist "if debtors lack a 'meaningful ability to repay' in light of income or expense adjustments not reflected in the means test formula or which, if not adjusted, will result in economic unfairness to debtor." *Id.* (citing *In re Delbecq*, 368 B.R. 754, 758 (Bankr. S.D. Ind. 2007); *In re Knight*, 370 B.R. 429, 437-38 (Bankr. N.D. Ga. 2007); *In re Martin*, 371 B.R. 347, 352-56 (Bankr. C.D. Ill. 2007)).

In the case of *In re Lightsey*, Judge Davis concluded that a narrower view of § 707(b)(2)(B)(i) was the correct view. 374 B.R. 377 (Bankr. S.D. Ga. 2007). Specifically, Judge Davis found that

> [t]he exception [under § 707(b)(2)(B)(i)] does not permit every conceivable unfortunate or "unfair" circumstance to rebut the presumption of abuse, but includes only those circumstances that cause higher household expenses or adjustments of income "for which there is no reasonable alternative." i.e., they are unforeseeable or beyond the control of the debtor."

*In re Lightsey*, 374 B.R. at 381-82. Judge Davis subsequently reaffirmed this holding in the case of *In re Cribbs*. 387 B.R. at 330. He also expounded upon the nature of circumstances which are "special" for purposes of § 707(b)(2)(B)(i), noting that they are, generally speaking, 1) "unanticipated,"[21] 2) "truly unavoidable,"[22] 3) "beyond the reasonable control of the debtor,"[23] 4) "out of the ordinary,"[24] and/or 5) "unforeseeable."[25] Judge Davis also commented on the

---

[21]*Id.* (citing *In re Sparks*, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006)).
[22]*Id.*
[23]*Id.* (citing *In re Tuss*, 360 B.R. 684, 701 (Bankr. D. Mont. 2007)).
[24]*Id.* (citing *In re Armstrong*, 2007 WL 1544591, at *2 (Bankr. N.D. Ohio May 24, 2007)).
[25]*Id.* (citing *In re Lightsey*, 374 B.R. 377, 381-82 (Bankr. S.D. Ga. 2007)).

9

"expansive" view, noting that the

> "meaningful ability to repay" standard [of the "expansive" view] for finding that there are "special circumstances" eviscerates the means test calculation by reintroducing, in every case, a more subjective judge-driven "smell test" to decide whether debtors can afford to repay. Under this approach, inability to repay standing alone makes the circumstance "special." If the court believes that debtor cannot repay, its conclusion trumps the means test which Congress established to measure ability to pay and returns § 707 to the pre-BAPCPA world that Congress rejected.

*Id.* at 329.

The Court agrees with Judge Davis' position and recognizes that this Court's obligation is to comply with the intent of the Code section. Therefore, this concludes that Debtor must provide testimony and/or evidence of an inability to repay his debts which arose out of circumstances that were unanticipated, truly unavoidable, beyond the reasonable control of the debtor, out of the ordinary, and/or unforeseeable in order to prove that "special circumstances" exist; testimony and/or evidence of inability to pay alone is not enough. Additionally, Debtor must itemize and provide sufficient documentation of any alleged "special circumstances," certify that the itemization and explanation are accurate, and offer testimony and/or evidence which reveals the absence of any reasonable alternatives.

### C. The Court's Analysis

Debtor contends that "special circumstances" exist in his case to rebut the presumption of abuse. Specifically, Debtor argues that the decrease in his employment income and loss of rental income amount to "special circumstances." In support of this contention, Debtor relies upon his testimony as outlined above and the original and amended Schedules I and J.

#### 1. Decrease in Employment Income

10

A review of Debtor's Schedules I and J, original and amended, indicates that Debtor's employment income has been significantly reduced to the point where his expenses under amended Schedule J now exceed the combined income of Debtor and his wife as listed under Debtor's amended Schedule I. This decrease in employment income is supported by Debtor's testimony. However, Debtor has failed to provide any documentation apart from his amended Schedules I and J which supports the employment income figure he claims to be receiving from his contract work for MLS Direct Network, Inc. Debtor filed Employee Income Records substantiating his stated employment income from Planet Cellular, Inc. at the commencement of this bankruptcy case. At the hearing, no similar documentation of payments or income from MLS Direct Network was introduced to support or substantiate his testimony. Without any additional documentation of Debtor's current employment income, the Debtor has failed to sufficiently itemize and document his alleged decrease in employment income pursuant to § 707(b)(2)(B)(ii) for the purpose of proving that "special circumstances" exist in this case.

Even if Debtor had provided sufficient itemization and documentation of his alleged decrease in employment income, Debtor must still offer a "detailed explanation" of the "special circumstances" which gave rise to his inability to repay his debts in order to rebut the presumption of abuse which has arisen in this case. Concerning the decrease in his employment income, Debtor testified that he left his position of employment with Planet Cellular, Inc. after his income from this employment had trended down to almost nothing because "the margins [in the wireless industry] were getting smaller." Debtor did not provide any details nor did he provide any evidence to support this statement; this solitary statement was Debtor's only explanation for leaving his position of employment with Planet Cellular, Inc.

11

This testimony is insufficient for the purpose of establishing that "special circumstances" exist in this case. The Court simply cannot conclude from this lone statement that the circumstances surrounding the decrease in Debtor's employment income were unanticipated, truly unavoidable, beyond the reasonable control of the debtor, out of the ordinary, and/or unforeseeable. Debtor's testimony was that he left his position with Planet Cellular, Inc. after observing his employment income trend down due to progressively decreasing margins in the wireless industry indicates and presumably he foresaw and anticipated that his employment income would ultimately decrease to almost nothing due to these progressively decreasing margins. No evidence of this decreasing income was provided. Furthermore, Debtor failed to offer any evidence showing that it was beyond his control as a vice-president of Planet Cellular, Inc. to counteract these progressively decreasing margins. The Court questions whether Debtor, as a vice-president, was in a position to make business decisions on behalf of Planet Cellular, Inc. to combat these decreasing margins. Could he have potentially shielded the company (and himself) from these decreasing margins through creative business solutions? Without any testimony concerning his ability (or inability) to do so, the Court simply cannot conclude that he had absolutely no control over the effect of the decreasing margins on Planet Cellular, Inc. and his own employment income. Clearly, Debtor's bare assertion that "the margins were getting smaller" is not sufficient evidence of "special circumstances."

### 2. Loss of Rental Income

As to Debtor's loss of rental income, Debtor testified that he has not received any rental income from any of his real estate investment properties since the summer of 2009. According to Debtor's testimony, this loss of rental income is a result of foreclosures and the absence of

12

renters. However, Debtor has failed to provide any documentation of these foreclosures and the absence of renters. He has also failed to provide any documentation of his alleged loss of rental income. Further handicapping Debtor's position is his testimony that he does not know exactly which rental properties he still owns. If Debtor is truly unaware of which rental properties he still owns, it is difficult for this Court to rely on Debtor's assertion that he is not receiving any rental income without evidence supporting that assertion. In view of the foregoing, the Court concludes that Debtor has not sufficiently itemized and documented his alleged loss of rental income pursuant to § 707(b)(2)(B)(ii) for the purpose of proving that "special circumstances" exist in this case.

    **3.    Conversion**

Because Debtor has failed to prove that "special circumstances" exist in this case, Debtor has failed to rebut the presumption of abuse. Consequently, Debtor's case must be either dismissed or, with the consent of the Debtor, converted to a case under chapter 11 or 13. *See* 11 U.S.C. § 707(b)(1). Debtor has given no indication to this Court that he is willing to convert this case; therefore, Debtor's chapter 7 case is due to be dismissed.

### III.  ORDER

Based on the foregoing, it is hereby **ORDERED, ADJUDGED** and **DECREED** that the Bankruptcy Administrator's Motion to Dismiss is **GRANTED**.

    Dated this the 30th day of June, 2010.

    /s/ Tamara O. Mitchell
    United States Bankruptcy Judge

TOM: rdt

Case 09-07528-TOM7    Doc 75    Filed 06/30/10    Entered 06/30/10 13:30:07    Desc Main
Document    Page 13 of 14